Filing # 11851838 Electronically Filed 03/27/2014 05:38:02 PM

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

SALVATORE DESANTIS, on behalf of
himself and all others similarly situated,

        Plaintiff,                    CASE NO.:

**MARRIOTT VACATIONS WORLDWIDE
CORP., MARRIOTT OWNERSHIP
RESORTS, INC.,** d/b/a Marriott Vacation
Club International, and **MARRIOTT
OWNERSHIP RESORTS
PROCUREMENT, LLC.,**

        Defendants.

_____/

CLASS REPRESENTATION
JURY TRIAL DEMANDED
INJUNCTIVE RELIEF SOUGHT

### CLASS ACTION COMPLAINT

Plaintiff, Salvatore DeSantis, on behalf of himself and the Class described below, brings the following claims against Defendants Marriott Vacations Worldwide Corp., Marriott Ownership Resorts, Inc., d/b/a Marriott Vacation Club International, and Marriott Ownership Resorts, Procurement, LLC (collectively, "Marriott" or "Defendants").

### NATURE OF THE ACTION

1.　　This is a civil action seeking monetary damages, restitution, and injunctive and declaratory relief from Marriott for using unfair, deceptive, and unconscionable means to impair the value and rights of Marriott Vacation Club members' timeshare interests to extract more money for an "upgraded plan."

2.　　Marriott Vacation Club is a corporation that licenses the "Marriott" name from Marriott International, Inc. and its affiliates. Its business consists of selling timeshares and it claims to be "the leader in the vacation ownership industry."

3.     A time share is a property interest in resort real estate for a specified time each year or biannually. Marriot's timeshare plan offered to DeSantis and putative class members is known as "interval ownership," where purchasers of timeshares receive a deeded interest in a particular piece of property for a set week of each year.

4.     With their timeshares, Marriott Vacation Club members may occupy the property during specified annual timeframes.

5.     The use and enjoyment of the deeded property was not, however, what attracted new customers to join into the Marriott Vacation Club. Marriott baited customers into the Marriott Vacation Club through a promise of flexibility and variety. It promised its Vacation Club Members the ability to trade their allotted week at their deeded property with that of another Marriott Vacation Club member. This system (the "Weeks Program") allowed members to travel to locations other than their primary deeded property and at times other than during their allotted week of the year. By offering this benefit, Marriott was able to convince customers to pay substantial sums of money for a timeshare, along with costly (and ever-rising) annual maintenance fees.

6.     Marriott Vacation Club has changed its system of exchanges to considerably devalue the timeshare interests of those in the Weeks Program.

7.     In 2010, Marriott stopped offering the Weeks Program to customers. Instead, it offers a new exchange system, the Points Program. In the Points Program, Marriott Vacation Club members purchase a deeded property interest, just as before, but now with it they receive an annual allotment of Vacation Club Points to use at Marriott Vacation Club resorts. Instead of trading their allotted week at their deeded property for that of another member's, members in the Points Program now use yearly allotted points to vacation in different resorts.

2

8.      The practical effect of this change has been devastating to Club Members in the Weeks Program. Without enrolling new members into the Weeks Program, the Club Members in the Weeks Program face a dwindling pool of members with whom they may trade based on normal attrition from the program alone.

9.      Worse yet, Marriott has targeted Club Members in the Weeks Program for "upgrades" into the Points Program. It claims that, although the Weeks Program was once the best system, as with any technology, improvements are made and upgrades are required. But Marriott does not make this upgrade for free. Instead it charges upwards of $10,000 for Club Members in the Weeks Program to convert their weeks into points for the Points Program.

10.     As a consequence of Marriott's hard sell effort targeted at Club Members in the Weeks Program, it has profited enormously by selling to its customers something Marriott has already sold them – the right to easily vacation in Marriott Club resort locations across the globe using their timeshare. Furthermore, with each "upgrade" sale it makes to Club Members in the Weeks Program, Marriott further undercuts the market for exchanging weeks and further devalues timeshares of those members in the Weeks Program.

11.     Marriott Vacation Club members enrolled in the Weeks Program have thus been left with two unappealing possibilities. They may accept that the once-robust trade network that permitted them to go on vacations to new and different places is now so depleted that it either severely limits their options or confines them to using only their deeded real estate; or they may pay Marriott an enormous sum of money to receive a benefit they had already bargained and paid for.

3

12.     Marriott's attempt to extract thousands of dollars by trying to resell members in the Weeks Program the very benefits it has taken away from them is fraudulent, deceptive, and unconscionable.

## PARTIES

13.     Plaintiff Salvatore DeSantis resides in Manalapan, New Jersey.  Plaintiff became a Marriott Vacation Club member on April 11, 2006.  Plaintiff paid $17,400.00 for his timeshare interval.  At all relevant times, Plaintiff paid all membership fees and all other fees associated with his membership.

14.     Defendant Marriott Vacations Worldwide Corporation is a publicly traded corporation headquartered in Orlando, Florida.  It is formerly a division of Marriott International, Inc., but broke off as an independent entity focusing on timeshares.  It owns and runs Marriott Vacation Club, Grand Residences by Marriott, and the Ritz-Carlton Destination Club.

15.     Defendant Marriott Ownership Resorts, Inc., d/b/a Marriott Vacation Club International, is a Delaware Corporation headquartered in Orlando, Florida and registered to do business in the State of Florida.  It is listed as the "Seller" in Plaintiff's timeshare contract.

16.     Defendant Marriott Ownership Resorts, Procurement, LLC is a Delaware Corporation headquartered in Orlando, Florida and registered to do business in the State of Florida.  It is a named party in the Plaintiff's timeshare contract.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter because the amount in controversy exceeds $15,000, exclusive of interest, costs and attorney's fees.

4

18.     Venue is proper in this County because the Time Share Agreement executed between Plaintiff and the Defendants in this matter states that "Venue shall be in Orange County, Florida" and actions giving rise to this lawsuit occurred in Orange County, Florida.

## CLASS REPRESENTATION ALLEGATIONS

19.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority prerequisites of Rule 1.220.

**A.     The Proposed Class**

20.     Plaintiff seeks to represent the following Class of similarly situated persons:

All purchasers of Marriott Vacation Club time share interests under the Weeks Program who owned their timeshare interest when Marriott Vacation Club stopped selling time share interests under that program, on June 20, 2010 (the "Class").

21.     Excluded from the Class are: Marriott Vacation Club; Marriot Vacation Club's parents, subsidiaries, affiliates, officers and directors; any entity in which Marriott Vacation Club has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

22.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

**B.     Numerosity**

23.     The members of the Class are so numerous that joinder is impractical.  Upon information and belief, at all relevant times Marriott had thousands of timeshare interest holders under the Weeks Program.  The Court may ascertain the exact size of the Class and the identities

5

of the individual members thereof through Defendants' records, which are in exclusive control of Defendants.

24.     This case centers on Defendants' devaluation of timeshare interests under the Weeks Program.  Because the loss that each Class member has faced is relatively small, Class Members are not likely to prosecute individual lawsuits that would cost more in attorney fees to bring the suit than the actual individual claim for recovery.

25.     Because of the various locations and large number of members of the Class, joinder of all members would be extremely difficult and inconvenient.  Timeshare interest holders reside all over of the country.

26.     In the interest of judicial economy, the Court should determine Defendants' liability for all Class members in a single action rather than having hundreds or thousands of cases for the same cause of action based on the same facts pending at the same time.

C.     **Typicality**

27.     Plaintiff's claims are typical of the claims of all members of the Class in that Plaintiff and each Class member is a Marriott Vacation Club timeshare interest holder under the Weeks Program which, as a result of Marriott's deceptive and unlawful conduct, has plummeted in value.

28.     Plaintiff's claims and the claims of each Class member are based on the same legal theories and arise from the same unlawful conduct.

29.     Plaintiff has suffered the same injury as all Class members.  Plaintiff has the same interest as every other Class member and has no interests antagonistic to the interests of any other Class member.

D.     **Common Questions of Law and Fact**

30. This case presents many questions of law and fact common to Plaintiff and the Class which predominate over any questions that may affect individual members, including:

    a. Whether Marriott engaged in deceptive business practices in connection with its advertising its timeshares;

    b. Whether Marriott engaged in unconscionable commercial practices in connection with its attempt to force Marriott Vacation Club members in the Weeks Program to "upgrade" their timeshares to enjoy the benefits they originally bargained for;

    c. Whether Marriott developed and implemented a coordinated and uniform marketing strategy designed to create and maintain the false impression among Plaintiff and the Class that their rights were not affected by ending the Weeks Program, while simultaneously trying to sell them an "upgrade" into the Points Program;

    d. Whether Marriott's abuse of discretion in ending the Weeks Program and deflating the timeshare exchange market (that induced the Class to purchase their timeshares to begin with) violated the implied covenant of good faith and fair dealing;

    e. Whether Marriott's deceptive advertising and failure to give priority to Marriott Vacation Club members in the Weeks Program constitutes a breach of the express terms of the Contract;

    f. Whether Marriott's deceptive and misleading advertising violates the FDUPTA;

7

g.    Whether Marriott's practice, of devaluing the timeshares of Plaintiff and the Class, through the decreased quality and quantity of timeshares available to Plaintiff and the Class, in order to resell them the benefits they had already bargained for via their new Points Program, violates FDUPTA;

h.    Whether Marriott acquired financial gain by means of conduct declared unlawful by FDUPTA.

**E.    Adequacy of Representation**

31.    Plaintiff is a member of the Class as defined above.

32.    Through his attorneys, Plaintiff can and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class.

33.    Plaintiff (i) held a timeshare interest under Marriott's Weeks Program; (ii) after the initiation of Marriott's Points Program, has found it increasingly difficult to exchange his timeshare for a desirable timeshare of equal quality; and, (iii) is unable to convert his timeshare membership to a membership in the Points Program without paying exorbitant amounts of money.

34.    Plaintiff has thus suffered the same injury as the Class members, that injury being the devaluation of Marriott timeshares through Marriott's termination of the Weeks Program.

35.    Plaintiff has the same interests as the Class members, including recovery of the lost value in their timeshares.  Plaintiff has no interests antagonistic or in conflict with the members of the Class he seeks to represent.

36.     Plaintiff has retained competent counsel and will fairly, adequately, and vigorously prosecute the claims of the Class and represent and protect the interest of the members of the Class.  Plaintiff's counsel is able, competent and qualified to prosecute this class action litigation on behalf of Plaintiff and the Class.

**F.      Predominance and Superiority**

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Marriott, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer a devaluation of their timeshare interest and Marriott will continue to unjustly reap rewards.

38.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

39.     Common questions of law or fact predominate over individual issues.  Predominant issues in this case include whether Defendants devalued timeshares owned by Plaintiff and members of the Class.

40.     Plaintiff is aware of no difficulty to be encountered in the managing of this action that would preclude its maintenance as a class action.

41.     Marriott also acted and refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory relief and corresponding final injunctive relief with respect to the Class as a whole.

## STATEMENT OF FACTS

**A.     Timeshares and Marriott**

42.     A timeshare is a form of joint interest in real estate in which numerous individuals share a legal interest in and enjoy the use or occupation of the real estate for a specified period of time.

43.     Legal interest in a timeshare can be acquired in two ways. The first is by acquiring fee title to a specific piece of real estate for a specified period of time, which is known as a "Deeded Interval." The owner of a Deeded Interval, along with all the other Deeded Interval owners in the same real estate, collectively owns the real estate.

44.     The second way a legal interest in a timeshare can be acquired is by acquiring a leasehold interest in or license to use a specific piece of real estate for a specified period of time, which is known as a "Vacation Interval." With Vacation Intervals, the real estate developer typically retains ownership of the real estate, but leases or licenses the right to use a portion of the real estate to individual lessees or licensees at agreed upon terms.

45.     The specified period of time during which the owner of a Deeded Interval or Vacation Interval has the right to occupy the real estate is known as a "Timeshare Interval."

46.     Timeshare Intervals generally cost between $8,000 and $20,000, depending on the interest being acquired. Additionally, Timeshare Interval owners are typically required to

pay annual maintenance fees in connection with their Timeshare Intervals, which steadily increase over time.

47.    Marriott purports to facilitate the exchange of Timeshare Intervals among owners of Timeshare Intervals through an agreement with Interval International.

48.    While membership in Interval International gives Marriott Vacation Club members access to "external exchanges" with other timeshares, these other programs are of significantly lower quality than the consistently high quality of Marriott resorts that customers can expect.

49.    Marriott has, in conjunction with Interval International, created a special exchange program allowing Marriott Vacation Club members to trade their timeshare weeks with one another. This system allowed members in the Weeks Program to avoid the additional expenses incurred by making "external exchanges" and by giving them priority access to Marriott resorts, which members know are of higher quality than other timeshare programs' resorts.

50.    Through a coordinated and uniform marketing strategy, Marriott created and maintained the impression that Marriott Vacation Club members in the Weeks Program would be able to use their timeshare interest for as long as they own it, and the rights of that ownership consisted of the ability to easily use the property during allotted weeks and the ability to exchange their timeshare weeks with the thousands of other Club members enrolled in the program.

51.    Marriott ended the Weeks Program in June of 2010. It created a point based system (the Points Program). Members in the Points Program cannot trade with other members,

11

in either the Points Program or the Weeks Program, for a different vacation. Instead they use allotted points as currency to reserve specific vacation locations and times.

52.    Since ceasing its Weeks Program, Marriott has limited the trading pool for members in Weeks Program because all new Marriott Vacation Club members are enrolled in the Points Program, and these new members cannot trade with members in the Weeks Program.

53.    The effect of this limitation is that Marriott Vacation Club members in the Weeks Program have vastly diminished property interests that do not provide them the very benefits for which they initially enrolled in Marriott Vacation Club to begin with—to be able to easily trade timeshare weeks for equivalent Marriott resorts in other locations. Members in the Weeks Program have experienced increasingly great difficulty in finding the exchanges they need to go on the vacations they prefer.

54.    Marriott has further reduced the trading pool through an aggressive marketing campaign targeting Marriott Vacation Club members already in the Weeks Program to convert their timeshare interest in the Weeks Program to a timeshare interest in the Points Program, costing these Marriott Vacation Club members upwards of $10,000 to once again have the ability to reserve their preferred vacation destinations—a benefit they had already bargained for in their original agreement.

55.    Not only does Marriott try to sell its Weeks Program members the rights that they have already purchased, but in addition to paying considerable amounts of money to convert their points, upon information and belief, the points that Weeks Program members receive for their converted timeshares are substantially less than are required to vacation at the very resort at which they had their original deeded timeshares in the Weeks Program. Thus, for the exorbitant sums of money they pay for conversion they get less than what they originally had. For

example, if a Points Program member that wishes to vacation at a particular resort during a particular week needs 3,500 points to make that reservation, a Weeks Program member having a deeded interest in that very week at that very location will only receive 3,150 points upon converting their interest to the Points Program. Thus, that former member of the Weeks Program will no longer be able to vacation at the location at which they had their deeded interest unless they vacation there every other year or they buy more, very expensive points. Despite paying large sums for the conversion, Weeks Members end up with less than they started with.

56.     Marriott has also moved its newest and best properties into the Point Program, so that members of the Weeks Program do not have the ability to find another member of the Weeks Program with whom to trade for that property.

**B.     Plaintiff's Timeshare**

57.     Plaintiff, Salvatore DeSantis, entered an agreement with Marriott Vacation Club on April 11, 2006. Plaintiff paid $17,400.00 for a deeded timeshare interest in one of Marriott Vacation Club's resorts in Orlando, Florida called "Horizons."

58.     Plaintiff decided on Horizons because of its proximity to amusement parks in Orlando, but recognized at the time that when his children got older the timeshare retained its value for him only in that he could easily trade with other Marriott Vacation Club members for different weeks in different locations. Without this benefit, Plaintiff would not have purchased his timeshare interest.

59.     Using Interval International, Plaintiff was able to trade his allotted interest at Horizons for the locations and resorts he desired—as Marriott originally promised.

60.     However, upon Marriott's conversion to the Points Program, Plaintiff has had great difficulty trading his interest at Horizons for the Marriott resorts he wishes to vacation at

because there are far fewer available trades to make. Plaintiff has had no access at all to Marriott's newer and better resorts because Marriott has reserved those exclusively for those in its Points Program.

61.     As a result of the Marriott's scheme to undercut the market for internal trades for weeks at Marriott resorts, Plaintiff was unable to obtain a reservation at a Marriott resort in Las Vegas, Nevada. Consequently, Plaintiff used his timeshare in an "external exchange" for a non-Marriott resort. To engage in the external exchange, Plaintiff paid additional fees. The non-Marriott resort was of very low quality and did not approach the high quality of the Marriott resort at which he wished to stay, or the quality of his own timeshare in Orlando. Plaintiff now only stays at Marriott locations or, if unavailable, forgoes using his timeshare and books a hotel instead.

62.     At present, Plaintiff no longer seeks to use his allotted week at Horizons and wishes only to trade it for other vacation destinations—as he was promised he would be able to do. Without the ability to easily trade for destinations equaling the quality of Horizons, Plaintiff's timeshare interest is worth far less than it should be.

63.     Even though Plaintiff's timeshare interest no longer holds the value it promised to hold, Marriott continues to charge Plaintiff ever-increasing maintenance fees for the Horizons property.

64.     Plaintiff would not be able to recoup his investment if he sold his timeshare interest.

65.     After converting to the Points Program and crippling the exchange market under the Weeks Program, Marriott attempted to sell Plaintiff a conversion to the Points Program for

$15,000.00—nearly the full amount that he paid for his original deeded interval, simply to maintain the rights he once had. Plaintiff refused to accept this audacious offer.

66.     Upon information and belief, Marriott is making similar offers of "upgrades" to all members of the Weeks Program.

67.     Marriott has thus attempted to create a demand for the Points Program among Weeks Program members by taking away the benefits members in the Weeks Program originally purchased.

68.     As a result of Marriott's scheme to force Weeks Program members to convert their deeded timeshare intervals, at a tremendous cost, to points to be used in the Points Program, Plaintiff is unable to utilize all the benefits he bargained for because he cannot trade his timeshare interest for other equivalent or desirable timeshare interests.   This substantially reduces the value of Plaintiff's timeshare interest.

## FIRST CLAIM FOR RELIEF

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNAIR TRADE PRACTICES ACT

69.     Plaintiff repeats the allegations above as if stated fully herein.

70.     Marriott's practices complained of herein constitute the "conduct of any trade or commerce" within the meaning of the Florida Deceptive and Unfair Trade Practices Act (the "FDUPTA"), Fla. Stat. §§ 501.201 *et seq.*

71.     Marriott engaged in deceptive behavior because it sold Plaintiff a timeshare by misleading Plaintiff to believe that the timeshare would retain the essential benefit for which Plaintiff purchased the timeshare—to be able to travel to high quality resorts easily and with flexibility.  But that is not what Plaintiff got out of his timeshare.  The trading pool in which

Plaintiff can exchange timeshares is so diminished by Marriott's conduct that Plaintiff can no longer go on the desirable vacations that induced him to purchase a timeshare from Marriott.

72.     Instead of providing the benefits Marriott represented, Marriott used a classic bait-and-switch technique to upsell Plaintiff into its new Points Program for nearly the full amount of money that Plaintiff spent to purchase his original timeshare interest. The Points Program offered Plaintiff nothing more than what he had originally bargained for, but required he pay $15,000 to enter it. Such deceptive conduct contravenes public policy.

73.     Marriott unfairly pulled the rug out from under the program that it sold to customers as one in which they would be able to "[e]xperience any property within the Marriott Vacation Club system" and whose benefits would extend "over the course of a few decades" to save customers "thousands upon thousands" in a hedge against "vacation inflation." Imagine the Possibilities Pamphlet pp. 2-3, Exhibit 1. But Marriott unilaterally drove down the value of its customers' investments in their timeshares to create the opportunity to charge them more for what they once had. Even though Marriott convinced customers that its timeshares hedged against the increasing costs of vacationing, Marriott aggressively markets the Points Program to Weeks Program members as a much needed, though costly, upgrade—an increased cost of vacationing.

74.     Marriott's unfair and deceptive practices have placed Marriott Vacation Club members in the Weeks Program in a position where they suffer either the harm of not being able to take the vacations they want or of paying exorbitant sum beyond their initial investment to go on those vacations.

75.     As a result of Marriott's violation of FDUPTA, Plaintiff and the Class have suffered damages in an amount to be proved at trial, including but not limited to, the reduced

value of their Weeks Program memberships, attorneys' fees and litigation expenses or other penalties as may be appropriate under applicable law.

76.    In addition to damages, Plaintiff and the Class also seek injunctive relief pursuant to § 501.211(1). FDUTPA permits a claim for injunctive relief by "anyone aggrieved" by an unfair or deceptive act, which has occurred, in now occurring, or is likely to occur in the future. Accordingly, Plaintiff and the Class request injunctive relief prohibiting Marriott's conduct alleged herein.

**SECOND CLAIM FOR RELIEF**

**BREACH OF THE EXPRESS TERMS OF THE CONTRACT**

77.    Plaintiff repeats the allegations above as if stated fully herein.

78.    Marriott offers buyers access to resorts and destinations worldwide. It provides buyers with literature stating that "[t]he advantages of your ownership with Marriott Vacation Club extend far beyond you own resort. You're also eligible to exchange your vacation to other resorts in fantastic destinations around the world within the Marriott Vacation Club Network." See Exhibit 1, p. 5.

79.    But by ending the Weeks Program, Marriott no longer provides the exchanges for "fantastic destinations." Instead, to access the best resorts, Marriott Vacation Club members in the Weeks Program must convert their ownership to the Points Program at a substantial cost.

80.    As part of ownership, Marriott promises access to the "Priority Exchange System," in which "[p]riority will be offered to such Owners over other Interval members seeking an internal exchange into one of [Marriott's resorts]." Public Offering Statement, Exhibit 2.

81. Marriott no longer provides Plaintiff with that priority, as it no longer treats owners uniformly. Instead it gives priority to Marriott Vacation Club members in the Points Program (who are also Interval members) by (1) reserving particular resorts for members in the Points Program only; and (2) facilitating Points Program members' ability to make reservations in any resort using points, and thereby decreasing availability of the best and most desirable resorts to those in the Weeks Program.

82. As a result of Marriott's breach, Plaintiff and the Class's timeshare interests have diminished in value and Plaintiff and members of the Class can no longer utilize the benefits of their bargain with Marriott. Plaintiff and the Class have suffered damages in the amount of the reduction in value of their timeshares.

## THIRD CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

83. Plaintiff repeats the allegations above as if stated fully herein.

84. Plaintiff and Marriott have contracted for the yearly use of Plaintiff's deeded property and the ability to exchange with other Marriott Vacation Club Members at resorts throughout the globe. The terms of this contract are embodied in Marriott's Contract for Purchase, HAO Condominium (the "Contract"). See Exhibit 3.

85. Under Florida law, good faith is an element of every contract for the purchase of a timeshare. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its

form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

86.      Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evading the spirit of the bargain, willfully rendering imperfect performance, abusing a power to specify terms, and interfering with or failing to cooperate with the other party's performance.

87.      Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Contract.

88.      Marriott has breached the covenant of good faith and fair dealing in the Contract through its effort to devalue timeshare interests in the Weeks Program.

89.      Although Marriott's Public Offering Statement states that the use of the exchange program is "subject to availability and the number of other timeshare estates in the exchange program," Marriott has abused this provision because it alone has the discretionary power to affect the number of timeshare estates in the exchange program and it has done so in bad faith and at the expense of Plaintiff and the other Class members.

90.      Marriott reduced and continues to reduce the pool of available exchanges that members in the Weeks Program can make. Marriott's systemic reduction of the pool of exchanges available was beyond the expectations of Plaintiff at the formation of the contract. Plaintiff did not reasonably expect that Marriott would create a competing program that would destroy the benefit of his bargain. Marriott engaged in this bad faith performance for illegitimate motives—to enrich itself by re-selling timeshares to members in the Weeks Program.

91.     Plaintiff and members of the Class have sustained damages as a result of Marriott's breach of the covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class, respectfully requests that this Court enter an order of judgment against Defendants, including the following:

A.      Certifying the action as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure, and appointing Plaintiff as Class Representative and Plaintiff's counsel of record as Class Counsel;

B.      An order providing injunctive relief to enjoin the conduct about which Plaintiff complains;

C.      An order declaring Marriott's unconscionable commercial practices, misrepresentations, omissions and other conduct as alleged herein violate the Florida Deceptive and Unfair Practices Trade Act;

D.      Reimbursement of ascertainable losses in the amount of money paid by Plaintiff and Class for their Marriott Vacation Club membership, maintenance fees, and other fees paid to Marriott;

E.      Actual damages, statutory damages, and other relief as provided by FDUPTA;

F.      Pre-judgment and post-judgment interest on such monetary relief;

G.      The costs of bringing this suit, including reasonable attorneys' fees pursuant to Fla. Stat. § 501.2105 and any other statutory or contractual provision; and

H.      Such other relief to which Plaintiff and the members of the Class may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 27, 2014                    VARNELL & WARWICK, P.A.

By:     /s/ Janet R. Varnell
        JANET R. VARNELL
        FLORIDA BAR NO. 0071072
        JVARNELL@VARNELLANDWARWICK.COM
        BRIAN W. WARWICK
        FLORIDA BAR NO. 0605573
        BWARWICK@VARNELLANDWARWICK.COM
        STEVEN T. SIMMONS, JR.
        SSIMMONS@VARNELLANDWARWICK.COM
        FLORIDA BAR NO. 0091654
        P.O. BOX 1870
        LADY LAKE, FL 32158
        TELEPHONE: (352) 753-8600
        FACSIMILE: (352) 504-3301

        SQUITIERI & FEARON, LLP
        STEPHEN J. FEARON, JR.
        CAITLIN DUFFY
        RAYMOND BARTO
        32 EAST 57TH STREET, 12TH FLOOR
        NEW YORK, NEW YORK 10022
        TEL:  (212) 421-6492
        FAX:  (212) 421-6553
        STEPHEN@SFCLASSLAW.COM
        CAITLIN@SFCLASSLAW.COM

        GERSOWITZ LIBO & KOREK, P.C.
        JEFF KOREK
        111 BROADWAY, 12TH FLOOR
        NEW YORK, NEW YORK 10006
        TEL:  (212) 285-4410
        FAX:  (212) 385-4417
        JKOREK@LAWYERTIME.COM

        ATTORNEYS FOR PLAINTIFF
        AND THE PROPOSED CLASS

21