# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SALVATORE DESANTIS,**

**Plaintiff,**

**v.** **Case No: 6:14-cv-733-Orl-31KRS**

**MARRIOTT OWNERSHIP RESORTS, INC.,**

**Defendant.**

---

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint (Doc. 56), Plaintiff's Response (Doc. 57), Defendant's Reply in Support of its Motion (Doc. 61), and Plaintiff's Sur-Reply (Doc. 63[1]).

### I. Background

In April 2006, Plaintiff purchased a one week timeshare interest in Horizons by Marriot Vacation Club at Orlando ("MVC"). In conjunction with his purchase, Plaintiff availed himself of the opportunity to join a timeshare exchange program operated by Interval International, Inc. ("Interval").[2] This program (the "Weeks Program") allowed Plaintiff to exchange his timeshare week with other Weeks Program participants. Plaintiff alleges that the Weeks Program was an important factor in his decision to buy the timeshare interest from MVC.

---

[1] Docket entry 63 is an Amended Sur-Reply submitted in order to attach an exhibit inadvertently omitted from the initial filing.

[2] MVC agreed to pay Plaintiff's initial membership fee in the exchange program.

In 2010, MVC introduced a points based program. Existing MVC timeshare owners (including Plaintiff) were allowed to enroll in the new program, but retained their existing benefits under the Weeks Program. Plaintiff, however, complains that because new purchasers are being enrolled in the points based program, he has fewer exchange options than he had previously, and that, as a result, his timeshare interest has been "devalued." Plaintiff claims that this constitutes a breach of his express contract with MVC (Count II), a breach of the implied covenant of good faith (Count III), and a violation of the Florida Deceptive and Unfair Trade Practice Act, §§ 501.201-.213 Florida Statutes ("FDUTPA") (Count I).

**II. Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## III. Analysis

### A. The Contract Claims

Plaintiff asserts two claims based on the timeshare purchase agreement[3] and an oblique reference to entitlements as a third party beneficiary.[4] With respect to the express contract the dispute involves Paragraph nine, which states:

> 9. EXCHANGE PROGRAM. Seller has executed an agreement with Interval International, Inc. ("Interval"), which provides for a reciprocal exchange program for owners of timeshare estates. Seller, at its sole expense, has paid the Developer's application fee therefore permitting Purchaser to join the program in the future. Seller makes no representations as to Interval, and all representations set forth within the brochures and literature of Interval are representations of Interval and not of Seller. Seller will pay Purchaser's initial membership fee for the timeshare estate(s) purchased. Thereafter, membership in the exchange program offered by Interval, or any other exchange program, is at the option and expense of Purchaser. Although Seller has entered into a multi-year agreement with Interval, Seller has retained the right to change its exchange program affiliation at a future date.

[3] The contract documents include the written "HAO Condominium Contract for Purchase" (Doc. 49-3) and the Public Offering Statement (Doc. 49-2). Interval's "Buyer's Guide" is not a contract document.

[4] Plaintiff's Response briefly argues that it can enforce the agreement between MVC and Interval as a third-party beneficiary. (*See* Doc. 57 at 7). However, the Amended Complaint says nothing about that contract, nor does it allege that MVC agreed with Interval to continue to promote the Weeks Program for the benefit of Weeks Program participants. Plaintiff's third-party beneficiary argument is inapplicable to the allegations of breach in the Amended Complaint and is accordingly without merit.

(Doc. 49-3). Plaintiff contends, in essence, that this language constitutes a promise by MVC to forbear in the future from any action that would adversely affect Plaintiff's participation in the Weeks Program. Neither the express contract nor the implied covenant warrant this conclusion.[5]

Paragraph nine acknowledges the existence of a contract between MVC and Interval which provides for a reciprocal exchange program that Plaintiff may join. Although membership in the program is at the option and expense of Plaintiff, MVC agreed to pay Plaintiff's initial membership fee. The Contract, however, expressly disclaims any representations made by Interval. It also makes clear that the program is operated by Interval, not MVC, and MVC maintains "the right to change its exchange program affiliation at a future date." (*Id.*) The Contract also clearly anticipates that other exchange programs may become available. This necessarily implies that future MVC buyers may have an opportunity to participate in a different exchange program operated by another exchange provider.

The Offering Statement's paragraph eight, likewise, includes no promise to continue promotion of the Weeks Program, nor to abstain from developing and promoting a new exchange program. It states:

> **8. Exchange Program Opportunities.** The Timeshare Plain is participating in both a priority or internal exchange program and an external exchange program. The name . . . of the exchange company presently offering these exchange programs is Interval International, Inc. ("Interval") . . . The Developer has paid the Developer's application fee, and for each Purchaser, the membership in the external exchange program is at the option and expense of the Purchaser and is a pre-requisite to participate in the internal or priority exchange program. The priority exchange program is a special service being offered by Interval to the Developer and the Owners of timeshare estates at those resorts developed and/or managed by the

[5] Contract construction is a matter of law, and dismissal is appropriate where the cited language in the contract unambiguously demonstrates that the Plaintiff is not entitled to the relief sought. *See Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002); *see also Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Pub. Co.*, 340 F. Supp. 993, 995 (M.D. Fla.) *aff'd*, 468 F.2d 824 (5th Cir. 1972) (dismissing claim for breach based on specific quoted passage of contract attached to complaint).

> Developer or the Management Company or any of their affiliated companies. Priority will be offered to such Owners over other Interval members seeking an internal exchange into one of such Developer or Management Company affiliated resorts. The external exchange program is a standard service offered by Interval. Although the Developer has entered into a multi-year agreement with Interval with respect to offering of exchange services, the Developer reserves the right, in its sole discretion, to change its affiliation to another exchange company at a future date, and any such change will not be deemed a material change. Interval is an independent exchange service company. **The Owner's participation in the internal or external exchange program is voluntary, and the use of either such exchange program is subject to the availability and number of other timeshare estates in the exchange program, and the applicable rules, regulations, terms and other restrictions (including transaction fees) which may be set by Interval from time to time.**

(*See* Doc. 49-2 at 13-14 ¶ 8) (emphasis added). Not only does this language include no promise to continue a particular exchange program, it warns that market forces and alternative program opportunities may impact the number of timeshare estates available for exchange. Plaintiff's argument that these documents create an obligation for MVC to maintain the pool of Weeks Program participants is unavailing and the express breach of contract claim (Count II) cannot stand.

As to the issue of the implied warranty of good faith and fair dealing, Florida Courts have adopted Justice Souter's[6] elaboration on the doctrine:

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

*Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. Dist. Ct. App. 1999) quoting *Centronics v. Genicom Corp.*, 132 N.H. 133, 562 A.2d 187, 193 (N.H.1989). Thus, where a party has substantial discretion in performing a contract, the implied duty to act in good faith precludes that party from acting "capriciously to contravene the reasonable contractual expectations of the other party." *Cox*,

[6] At the time Justice Souter explained the doctrine he was serving on the New Hampshire Supreme Court.

732 So. 2d at 1097-98; *see also Sunshine Gasoline Distributors, Inc. v. Biscayne Enterprises, Inc.*, 139 So. 3d 978, 980 n.1 (Fla. Dist. Ct. App. 2014) ("The duty of good faith, however, is imposed in these instances only to protect the reasonable expectations of the parties to the contract when a broad range of authority is reposed in one of those parties.").

Here, Plaintiff could not have reasonably expected MVC to exercise its discretion to maintain a certain level of Weeks Program participants, because the contract itself does not in any way restrict MVC's discretion in this regard. Indeed, the Contract expressly reserves to MVC the right to "change its exchange program affiliation at a future date." (Doc. 49-3 ¶ 9). Thus, Count III will be dismissed.

**B. FDUTPA**

Plaintiff's central theory is that the Defendant's phase-out of the Weeks Program and promotion of the points based program is a deceptive and unfair trade practice. "Although not specifically identified in the statute, there are basically three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008). Plaintiff's theory is that "Marriot's creation of a competing exchange program to the detriment of its customers without offering conversion value violates FDUTPA." (Doc. 49 ¶ 77). However, this is the same theory that underlies the contract claims, which is insufficient to state a FDUTPA claim under Florida law. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 n.2 (Fla. 2003) (cautioning that allegations of breach of contract without significant allegations of unfair or deceptive conduct cannot state FDUTPA claim); *Hache v. Damon Corp.*, 8:07CV1248T30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) ("As Plaintiffs have failed to allege significant deception or malice on the part of Defendants, their allegations are insufficient to state a claim under

FDUTPA."); *see also Matrix Group Ltd. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 596 (8th Cir. 2007) (applying Florida law and affirming dismissal of FDUTPA claim noting that where plaintiff alleged "only that the [defendant] wanted to get [itself] out of the license agreement and intentionally caused a breach of that agreement" that behavior did not raise to the level of deception or malice sufficient to state a FDUTPA claim).

Although a breach of a contract can be a violation of FDUTPA in some circumstances, Plaintiff has simply asserted that MVC had a contractual obligation to abstain from creating and promoting the points based program in a way that drained the Weeks Program exchange pool. That does not raise significant allegations of unfair or deceptive conduct sufficient to state a claim under FDUTPA.

Plaintiff also argues that he has asserted a *per se* violation of FDUTPA under a bait-and-switch theory. This is without merit. MVC offered Plaintiff the opportunity to participate in the Weeks Program, and the Plaintiff is, up to the date of the Motion, still participating in that program. The Federal Trade Commission[7] ("FTC") has promulgated the following definition for "Bait advertising."

> Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.

---

[7] FDUTPA provides that in construing its language prohibiting unfair or deceptive acts, "courts should look to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1366 (S.D. Fla. 2007) (citing § 501.204 Fla. Stat.); *see also Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 257 (11th Cir. 2006) (citing 16 C.F.R. § 238.0 for analysis of bait and switch allegations under FDUTPA).

16 C.F.R. § 238.0. Plaintiff notes that the FTC looks to whether a delivered product was "disparaged" or "unusable or impractical for the purpose represented or implied." (*See* Doc. 57 at 14 quoting 16 C.F.R. § 238.4(c)-(d)). The Amended Complaint mentions at several points that the trading pool was once robust and supported by MVC. (*See* Doc. 49 ¶¶ 12, 53, 67). The Plaintiff's entire theory of the case is that, at the time he bought into the Weeks Program, it was what he wanted and MVC was promoting it, ensuring a strong timeshare trading pool. These allegations undercut Plaintiff's bait-and-switch theory because, assumed as true, they indicate the Weeks Program was usable, not disparaged, and not simply a mechanism by which to sell something else. Further, the Amended Complaint specifically states MVC did not decide to stop offering the Weeks Program to customers until 2010—a full four years after Plaintiff bought into the system. (Doc. 49 ¶ 7). It defies logic for MVC to have created a robust trading network for the primary aim of baiting people like Plaintiff into the points based program which was not implemented until years later.

Trade and commerce depend upon the sanctity of contract law and centuries of common law development. In order for a FDUTPA claim to overcome the rights and obligations established by the terms of an express contract, there must be allegations of misconduct beyond that of a simple breach of that contract. As noted by the above case law, this conduct must amount to deception or malice on the part of Defendant. Plaintiff's allegations here do not raise to that level. Indeed, Plaintiff got what he was promised and MVC, responding to a change in the timeshare market, exercised its contractual right to change its exchange program affiliation. These allegations do not meet the threshold necessary to state a viable FDUTPA claim, and Count I will, therefore, be dismissed.

It is therefore,

**ORDERED,** the Defendant's Motion (Doc. 56) is **GRANTED**, and Plaintiff's Amended Complaint is **DISMISSED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 14, 2014.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party